IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-00423-WYD-MJW

TYRONE A. HONEYCUTT,
LONNIE L. HARRIS, and
SEAN MURRAY,

      Plaintiffs,

v.

SAFEWAY, INC.,

      Defendant.

---

## ORDER

---

      This matter is before the Court on five separate motions: (1) Defendant's Motion for Summary Judgment on Plaintiff Sean Murray's claims [Docket #122], (2) Defendant's Motion for Summary Judgment on Plaintiff Lonnie Harris' Claims [Docket #169], (3) Defendant's Motion for Summary Judgment on Plaintiff Tyrone Honeycutt's Claims [Docket #172], (4) Defendant's Motion to Strike Plaintiff Tyrone Honeycutt and Lonnie Harris's Responses to Safeway's Motion for Summary Judgment and Supporting Affidavits [Docket #189], and (5) Plaintiffs Harris and Honeycutt's First Motion to Amend/Correct/Modify Brief in Opposition to Motion [Docket #201].

      For the reasons stated below Defendant's Motion for Summary Judgment on Plaintiff Harris' Claims [Docket #169] and Defendant's Motion for Summary Judgment on Plaintiff Honeycutt's Claims [Docket #172]  are DENIED.  Defendant's Motion for Summary Judgment on Plaintiff Murray's claims [Docket #122], on the other hand, is

GRANTED.  As set forth herein, Defendant's Motion to Strike Plaintiff Tyrone Honeycutt

and Lonnie Harris's Responses to Safeway's Motion for Summary Judgment and

Supporting Affidavits [Docket #189] is GRANTED in part and DENIED in part.  Finally,

Plaintiffs Harris and Honeycutt's First Motion to Amend/Correct/Modify Brief in

Opposition to Motion [Docket #201] is DENIED as MOOT.

I. <u>INTRODUCTION</u>

This is an employment discrimination case.  Plaintiffs Tyrone Honeycutt, Lonnie

Harris, and Sean Murray allege that Safeway Inc. ("Safeway") discriminated and

retaliated against them in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e *et seq.* (2005), and 42 U.S.C. § 1981.  Specifically, Plaintiffs

allege that Safeway disciplined Plaintiffs without cause and maintained a hostile work

environment.  Plaintiffs Harris and Honeycutt also allege that Safeway retaliated

against Plaintiffs for filing an EEOC claim.

The facts pertinent to this case are as follows.[1]  All three Plaintiffs are African-

American.  Plaintiffs are former employees of Safeway and during the relevant time

period they worked in the Safeway Milk Plant in Denver, Colorado.  On April 23, 2003,

Plaintiffs Harris and Honeycutt filed a complaint with the Equal Employment

Opportunity Commission ("EEOC") alleging discrimination in the workplace.

Plaintiffs Harris and Honeycutt allege they were singled out for discipline

because of their race.  Sean Murray also states that he was told by the plant manager

---

[1]  To the extent the facts are undisputed, I have not cited to the record or the parties' briefs.
Further, I have considered the other facts referenced in the briefs filed by the parties, but deem the facts
set out herein the most relevant.

to target African-Americans for discipline (Murray Depo. 87).  Safeway disciplined Plaintiff Harris on several occasions: First, Plaintiff Harris received a verbal warning on February 18, 2003; Second, a corrective action report on April 25, 2004; Third, on December 17, 2004, Plaintiff Harris received a 5-day suspension. Eventually, Plaintiff Harris resigned from Safeway on February 14, 2005.  Plaintiff Honeycutt was also disciplined by Safeway.  On April 15, 2003, Plaintiff Honeycutt received a verbal warning that was in the form of a written corrective action report.  Plaintiff Honeycutt also received other warnings which were ultimately withdrawn.

Unlike Plaintiffs Honeycutt and Harris, Plaintiff Murray was never written up while he was employed by Safeway.  On February 8, 2003, Plaintiff Murray was arrested for kidnaping and sexual assault.  Safeway terminated Plaintiff Murray's employment on February 24, 2003.  In the letter of termination, Safeway indicated that Plaintiff Murray was being terminated because he was unable to continue working due to his being incarcerated.

All Plaintiffs allege that Safeway subjected them to a hostile work environment. As support for this claim, Plaintiffs provide evidence that Schoenbachler placed a doll depicting an African American man (Defendants allege the doll was a representation of Louis Armstrong) on his desk next to a white Sylvester Stallone doll from the movie "Rocky."  It is disputed whether Plaintiffs ever told Schoenbachler that the doll offended them.  The doll was removed after Plaintiffs Honeycutt and Harris filed their EEOC complaint.  Plaintiff Harris alleges that Mario Adamy (another Safeway employee) took the doll off Schoenbachler's desk and pointed at him.  (Harris Depo. at 130-131).  Also,

there is evidence that Harris heard a co-worker state to an African-American, "shut up you piece of monkey-meat" and that this comment went out over the plant radio, (Harris Aff. ¶ 12), and that Harris heard a supervisor stated over the radio that an African-American was doing barbeque instead of working (Harris Aff. ¶ 12).  Further, there is evidence that Harris and Honeycutt heard another co-worker called African-Americans "nigger," (Harris Aff. ¶ 12; Honeycutt Aff. ¶ 2).

II.   <u>WHETHER STRIKING PLAINTIFF HONEYCUTT AND HARRIS'S RESPONSES AND/OR AFFIDAVITS IS PROPER</u>

Safeway filed a Motion to Strike Plaintiff Tyrone Honeycutt and Lonnie Harris's Responses to Defendant's Motion for Summary Judgement on November 28, 2006 [#189].  Safeway first filed Motions for Summary Judgment on January 12, 2006.  By Minute Order dated May 3, 2006, Plaintiffs were allowed to amend their complaint. Safeway indicated that it had no objection to Plaintiffs amending their complaint, so long as Safeway had the opportunity to supplement the pending motions for summary judgment.  On May 3, 2006, I granted Safeway's request to supplement its motions.  On August 24, 2006, however, I issued an Order, finding that the original motions for summary judgment were denied as moot, and recognizing that Safeway would be refiling new summary judgment motions by August 31, 2006.

A.   <u>Whether Plaintiffs' Response Briefs should be Stricken</u>

Safeway argues that this Court's August 24 Order allowed for supplemental briefing only, and that "Plaintiffs' have used the supplemental briefing as an opportunity to re-brief their *entire* case."  Safeway states that the August 24 Order "made clear that the instant briefs were to be 'supplemental' briefs *only*."  Contrary to Safeway's

-4-

argument, in the August 24 Order the Court did not so limit the briefing of the new

Motions for Summary Judgment.  The August 24 Order noted that "Safeway does *not*

*necessarily* have to rebrief in its supplemental motions issues that were discussed in

the original motions.  If Safeway wants the Court to consider any of the arguments in

the original motions, its supplemental motions *may* incorporate the relevant portions of

the original motions to be considered."  (Order at 2).  The Court's Order made clear that

incorporating the original motion was permissive only.  Accordingly, I find that

Safeway's argument is without merit.

Safeway also argues that Plaintiffs' Response Briefs should be stricken because

they "repeatedly violate the Court's Rules." (Pl. Mtn. Docket #189 at 2).  I find that

Plaintiffs' Response Briefs substantially comply with this Court's practice standards.

Accordingly, I find that Plaintiffs' Responses should not be stricken.

B.     <u>Whether Plaintiffs' Supporting Affidavits Should be Stricken in Full or in</u>
       <u>Part</u>

Safeway also argues that Plaintiffs' affidavits should be stricken because the

affidavits "constitute sham affidavits that are unsupported by admissible evidence,

offered only to manufacture an issue of fact where none exists."  (Def. Mtn. Docket

#189 at 3).  While portions of the affidavits do constitute inadmissible evidence, I do

not find that the affidavits should be stricken in full.

Safeway also urges this Court to strike portions of the affidavits that constitute

inadmissible evidence.  It is the rule in this jurisdiction that only admissible evidence

may be considered when ruling on a summary judgment motion.  *See World of Sleep,*

*Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.), *cert. denied*, 474 U.S. 823

(1985).  Speculation, opinion, or hearsay testimony is "not suitable grist for the summary judgment mill."  *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995).

Recognizing the above cited rule, this Court did not consider any inadmissible evidence in deciding these Motions for Summary Judgment.  Statements contained within Plaintiffs' affidavits for which the declarant had no personal knowledge were disregarded.  For example, statements such as "[t]he doll was not there to honor Louis Armstrong, it was to intimidate and humiliate African-Americans," (Honeycutt Aff. ¶2), and "[a third party's statements] were intended to be demeaning," (Honeycutt Aff. ¶6), were not considered.  Further, I did not consider hearsay statements for the truth of the matter asserted unless these statements fell within one of the recognized exceptions to the hearsay rule.   For example, Honeycutt's statement that "union representatives told Bill Schoenbachler he could not hold me late," (Second Honeycutt Aff. ¶5), is inadmissible hearsay and was not considered for the truth of the matter asserted.  Similarly, Plaintiff Harris's and Murray's Affidavits contained inadmissible testimony that was not considered in deciding these Motions for Summary Judgment.

III.   Safeway's Motions for Summary Judgment

Safeway has filed three separate Motions for Summary Judgment: a Motion for Summary Judgment on Plaintiff Murray's claims [Docket #122], a Motion for Summary Judgment on Plaintiff Harris' Claims [Docket #169], and a Motion for Summary Judgment on Plaintiff Honeycutt's Claims [Docket #172].  In all three Motions, Safeway argues that the respective Plaintiffs have failed to show that there is a genuine issue as to any material fact and that the claims should be dismissed.

A.     Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.     Timeliness of Claims

Safeway argues that many of Plaintiff Honeycutt's alleged discriminatory acts are time-barred.  Under Title VII of the Civil Rights Act of 1964, a plaintiff "shall file an employment discrimination charge with the EEOC either 180 or 300 days after an "alleged unlawful employment practice occurred."  The Supreme Court has recognized that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Contrary to Safeway's assertion, I find that it is proper to consider all of Plaintiff Honeycutt's allegations in the present Motion for Summary Judgment.  While it is true that an employment claim may not be filed in federal court before administrative

remedies have been exhausted, an employee can use time-barred prior acts "as background evidence in support of a *timely* claim." *Haynes v. Level 3 Communication*, 456 F.3d 1215, 1223 (10th Cir. 2006).

Lonnie Harris filed his first EEOC complaint on April 23, 2003 and a second EEOC complaint on September 9, 2005. Safeway argues that all alleged events occurring between April 28, 2007 through November 13, 2004 (the time between the first EEOC complaint and 300 days prior to the second EEOC complaint) are time-barred. However, at least some of the alleged discriminatory adverse employment actions did occur within the statutory time period. First, Plaintiff Honeycutt's received a "verbal" written warning that was placed in his file on April 15, 2003, which is within 300 days of Plaintiff Honeycutt's first EEOC complaint. Second, while the record is not clear as to the exact dates, Plaintiff Honeycutt also received similar warnings that were later withdrawn. Any of the warnings occurring within the statutory time period are not time barred. Finally, Plaintiff Honeycutt also alleges that he was constructively discharged on November 24, 2007, which is within the 300 day time period of the second complaint.

Further, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105. Accordingly, all of the allegations relating to Plaintiff Honeycutt's hostile work environment claim will be considered in this summary judgement motion,

regardless of whether each individual allegation occurred within 300 days of Plaintiff

Honeycutt's EEOC complaints.

    C.    <u>Discrimination Pursuant to 42 U.S.C. § 2000e-2(a)(1)</u>

    Title VII provides in part that it is unlawful for an employer to discharge or

otherwise discriminate against any individual based upon race.  42 U.S.C. § 2000e-

2(a)(1).  To state a valid claim under Title VII, plaintiff must prove by a preponderance

of the evidence that the employer engaged in intentional discrimination.  *See St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

    Where the plaintiff does not have direct evidence of discrimination, a plaintiff

may rely on indirect evidence by invoking the analysis first articulated in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Perry v. Woodward*, 199 F.3d 1126,

1135 (10th Cir.1999).  When the *McDonnell Douglas* analysis is utilized, the burden of

production shifts from plaintiff to defendant and back to plaintiff.  The ultimate burden of

proving discrimination, however is borne by the plaintiff.  *Id.*

    1.    <u>Prima Facie Case</u>

    Safeway argues that all three Plaintiffs fail to make out a prima facie case for

employment discrimination.  In a footnote in *Kendrick v. Penske Transportation*

*Systems, Inc.*, 220 F.3d 1220, 1227 n. 6 (10th Cir. 2000), the Tenth Circuit noted that it

has on occasion adopted a more general test for determining if a plaintiff has

established a prima facie case of discrimination: (1) plaintiff belongs to a protected

class; (2) plaintiff was qualified for her job; and (3) plaintiff was terminated [or suffered

adverse action] under circumstances giving rise to an inference of discrimination.  *Id.*

(citing *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416-17 (10th Cir. 1993);

*see also Hysten v. Burlington Northern and Santa Fe Railway Co.*, 296 F.3d 1177, 1181

(10th Cir. 2002) (adopting this test).  "The critical prima facie inquiry in all cases is

whether the plaintiff has demonstrated that the adverse employment action occurred

'under circumstances which give rise to an inference of unlawful discrimination.'"

*Kendrick,* 220 F.3d at 1227 (quoting *Burdine,* 450 U.S. at 253).

Specifically, Safeway asserts there is no evidence that Plaintiffs suffered an

"adverse employment action."  The "Tenth Circuit has given a liberal definition to

"adverse employment action."  *Lee v. New Mexico State Univ. Bd. of Regents*, 102 F.

Supp. 2d 1265, 1274 (D.N.M. 2000).  Increased scrutiny, criticism and the compiling of

negative reports on an employee can rise to the level of an adverse action where they

"adversely affect the employee's job position."  *Id.* at 1275 (citing cases).

Plaintiffs Harris and Honeycutt have demonstrated that there is evidence that the

discipline invoked by Safeway could "adversely affect the employee's job position."

Specifically, in Mr. Schoenbacher's deposition he states that Safeway's discipline

policy is progressive: First, an employee will receive a verbal warning; Next, an

employee may receive a written warning; If the infraction occurs again, the employee

may receive a suspension; Finally, the employee may be terminated.  (Schoenbacher

Depo. 291-341).

Safeway admits that Plaintiff Harris was subjected to this progressive discipline,

stating that: "On February 18, 2003, Harris received a verbal warning..." (Def. Mtn.

Docket #170 ¶ 33); "On April 25, 2003, Harris received a corrective action report..."  (*Id.*

¶ 36); and, finally, "Harris received a 5-day suspension..." (*Id.* ¶ 40). Safeway also admits that Plaintiff Honeycutt was given a verbal warnings. (Def. Mot. Docket #173 ¶¶ 25, 51). Plaintiff Honeycutt's Corrective Action Report indicated that the next disciplinary action would be progressive, a written warning. (*Id.* Exh. 5). Accordingly, I find that the discipline received by Plaintiffs Harris and Honeycutt was "adverse employment action."

Plaintiff Murray argues that Safeway subjected him to three different instances of adverse employment action: (1) Murray was criticized and scrutinized in his job, (2) Murray was denied a leave of absence, and (3) Murray was terminated. Contrary to the case of Plaintiffs Harris and Honeycutt, Murray admits he never received a verbal warning or any other former discipline. (Murray Depo. At 86:25-87:1). Because Murray was not subjected to Safeway's progressive discipline process, I find that the alleged criticism and scrutiny was not an "adverse employment action." Similarly, denial of leave did not adversely affect the Murray's job position and I find that it was not an adverse employment action. However, Plaintiff Murray's termination was clearly "adverse employment action."

Accordingly, I find that all three Plaintiffs have made out a prima facie case of employment discrimination.

### 2.   Legitimate, Non-Discriminatory Reason for its Actions

If a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence that it had a legitimate nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802-03. Based on the evidence

presented, if any rational person would have to find the existence of facts constituting a prima facie case and the defendant fails to meet its "burden of production--i.e., has failed to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action," judgment must be awarded to the plaintiff as a matter of law. *St. Mary's*, 113 S.Ct. at 2748. Conversely, if the defendant meets its burden of production, the presumption of discrimination is rebutted and "simply drops out of the picture." *Id.* at 2749.

I find that Safeway articulated a legitimate and non-discriminatory reason for its actions. Safeway asserts that Plaintiff Harris was subjected to discipline because he failed to follow procedures and was insubordinate. Similarly, Safeway asserts that Plaintiff Honeycutt was disciplined for not following procedures. As for Plaintiff Murray, Safeway maintains that he was terminated because he had been incarcerated indefinitely. Consequently, as to all Plaintiffs, the presumption of discrimination drops out of the picture and Plaintiffs must demonstrate that Safeway's proffered explanations are pretextual.

### 3.   Pretext

Once the employer puts forth a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must demonstrate that the defendant's proffered explanation is pretextual. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995). *Id.* Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Id.* Pretext is normally shown in one of

three ways: "(1) with evidence that the defendant's stated reason for the adverse employment action was false . . .; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff." *Kendrick v. Penske Transportation Systems, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Safeway argues that Plaintiffs Harris and Honeycutt fail to provide any evidence supporting their claim that Safeway's legitimate, non-discriminatory reason for the adverse employment action is a pretext for discrimination.  In response, Plaintiffs Harris and Honeycutt argue that there is evidence in the record: (1) that Safeway's purported reasons are not true and (2) that Safeway was acting contrary to company practice by disciplining them more often than similarly situated non-minority employees.

First, I find that Plaintiff Harris has provided evidence that indicates Safeway's purported reasons for the discipline, up to and including giving him a five day suspension, are false.  (*See e.g.* Harris Depo 141:24-143:4; 145:3-149:25; 188:18-191:12; 196:15-25, 202:9, #183 Exh. 4, Harris Second Aff. ¶ 7, 25).  "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.*

Similarly, I find that Plaintiff Honeycutt has provided evidence that Safeway's purported reasons for disciplining him were not true.  First, Plaintiff Honeycutt alleges that he did clean the cream line out (the subject of his April 15, 2003, Corrective Action

Report).  Also, Plaintiff Honeycutt alleges that he received 11 reprimands in 2003, which were not withdrawn until Plaintiff Honeycutt filed greivances.  Plaintiff Honeycutt's statements that he was disciplined eleven times, ten of which were later revoked, also supports a finding that Plaintiff Honeycutt was being undeservedly targeted for discipline.

Second, I also find that there is evidence that Safeway treated similarly-situated employees differently from Plaintiffs Harris and Honeycutt.  "A plaintiff who wishes to show that the company acted contrary to an unwritten policy or company practice often does so by providing evidence that he was treated differently than other similarly-situated employees who violated work rules of comparable seriousness."  *Kendrick*, 220 F.3d at 1230.  Evidence that the defendant treated the plaintiff differently from others who were similarly situated is especially relevant to a showing of pretext.  *Gossett v. State of Oklahoma*, No. 98-5084 (10th Cir. April 10, 2001).  "An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'" *Kendrick*, 220 F.3d at 1232 (quotation omitted).

I find that Plaintiff Murray, on the other hand, has not provided any admissible evidence which would support a finding that Safeway terminated his employment for any other reason than the legitimate, non-discriminatory reason that Safeway articulated.  It is uncontested that on February 8, 2003, Plaintiff Murray was arrested for kidnapping and sexual assault.  Plaintiff Murray was incarcerated on February 24, 2003, the date that he was terminated from Safeway.  Plaintiff Murray was allowed to

post bail on March 14 or 15, but was later convicted and is currently serving a nine year sentence.  In sum, at the time of Plaintiff Murray's incarceration, he was incarcerated and was not set to be released for an indefinite period of time.  The factual record is consistent with Safeway's claim that Plaintiff Murray was terminated because of his incarceration.  Further, Plaintiff Murray has not alleged or demonstrated that any other employee was allowed to keep his or her job in a similar situation.

D.  Hostile Work Environment

Plaintiffs Honeycutt, Harris, and Murray all allege that Safeway subject them to a hostile work environment.  "Hostile work environment harassment arises when the alleged discriminatory conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'"  *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987).  "Isolated or trivial episodes of harassment are insufficient to satisfy this standard."  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986).

"A court must look to the totality of the circumstances to determine whether the alleged conduct is sufficiently pervasive to create a hostile environment."  *Schrader v. E.G.& G., Inc.,* 953 F. Supp. 1160, 1168 (D. Colo. 1997).  "The factors that may be considered include: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Schrader, id.* (quotation omitted).

I find that there is an issue of triable fact as to whether Plaintiffs Honeycutt and Harris were subjected to a hostile work environment.  As explained above, there is evidence in the record that Honeycutt and Harris were singled out for discipline on the basis of their race.  Further, there is evidence of other discriminatory conduct.  I find that the evidence showing that Harris and Honeycutt were singled out for discipline, coupled with evidence of other discriminatory acts, is sufficient for Plaintiffs Harris and Honeycutt to go forward on their hostile work environment claim.

To the contrary, I find that Plaintiff Murray has not provided the court with sufficient evidence that he was subjected to a hostile work environment.  As explained above, the only "adverse employment action" that Plaintiff Murray was subjected to was his eventual termination.  Plaintiff Murray provided no evidence that Safeway's reason for his termination was pretextual.  Unlike Plaintiffs Harris and Honeycutt, Plaintiff Murray was not repeatedly subjected to Safeway's progressive discipline process.  The remaining evidence that Plaintiff Murray provides, even taken in the light most favorable to Plaintiff Murray, only shows "isolated or trivial episodes of harassment." See *Meritor Savings Bank*, 477 U.S. at 65.  Accordingly, I find that Plaintiff Murray's claim for hostile work environment should be dismissed.

E. <u>Constructive Discharge</u>

Plaintiffs Harris and Honeycutt both allege that they were constructively discharged for discriminatory reasons.  Safeway argues that there is not a triable issue of fact relating to Plaintiffs' constructive discharge claims and that these claims should be dismissed on summary judgment.  "In order to make out a constructive discharge

claim, [plaintiffs] must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable.  See *Derr v. Gulf Oil Corp.*, 96 F.2d 340, 343-44 (10th Cir.1986).  "Essentially, a plaintiff must show that she had 'no other choice but to quit.'" *Id.* (quoting *Woodward v. City of Worland*, 977 F.2d 1392,1401 (10th Cir. 1992))."  A finding of constructive discharge must not be based solely on the discriminatory act; there must also be aggravating factors that make staying on the job intolerable, such as perceived demotion or reassignment.  *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 992-93 (10th Cir. 1994) (citing *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986).

I find that Plaintiff Harris has provided the court with sufficient evidence to survive summary judgment on his claim that he was constructively discharged.  As explained above, Safeway had a progressive discipline policy.  An employee would first receive a verbal warning; next, he could receive a written warning; if there was another incident the employee could receive a suspension; and, finally, an employee could be terminated.  Plaintiff Harris was subjected to this disciplinary process, up to and including a five-day suspension.  The inter-office communication issued after this suspension explicitly stated that "[a]ny future violations of plant rules, policies, or procedures including insubordination, contempt of authority, failure to follow instructions will result in further disciplinary action that may include termination of employment."  (Def. Br. Docket #170 Tab 11).  Looking at the evidence in the light most favorable to Plaintiff Harris, there is evidence that he was repeatedly being singled out and disciplined.  The next step after his five-day suspension would likely have been

termination.  I also find that there is a genuine issue of material fact as to whether or not Plaintiff Honeycutt was constructively discharged.  Plaintiff Honeycutt alleges that he was disciplined repeatedly and that the majority of these disciplinary actions were revoked after he grieved them.

E.  Retaliation

Plaintiffs Harris and Honeycutt also allege that they were retaliated against because they filed the initial EEOC complaint on April 23, 2003.  To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in protected opposition to statutorily prohibited discrimination; (2) his employer took adverse action contemporaneously or subsequent to his protected activity; and (3) a causal connection exists between the employer's adverse action and his protected activity.  *See Perry*, 199 F.3d at 1141 n.12; *Kendrick*, 220 F.3d at 1235.

The Tenth Circuit holds the *McDonnell Douglas/Burdine* framework applies to a retaliation claim under Title VII.  *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1381 (10th Cir. 1994).   The filing of an EEOC complaint satisfies the first element.  *Id.* Both Plaintiffs have demonstrated that they filed an EEOC complaint on April 23, 2003.  As explained above, both Plaintiffs Harris and Honeycutt have provided evidence that they were subjected to "adverse employment action."  Once again, Plaintiffs Harris and Honeycutt brought forth evidence that they were singled out for discipline for discriminatory purposes.

A Plaintiff must also demonstrate that there is a causal connection between the adverse action and the protected activity (in this case, the filing of the EEOC

-18-

Complaint).  The causal connection "'may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed by adverse action.'"  *Conner v. Shnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1983).  "Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond temporal proximity to establish causation.  *Id.* (4 month time lag between plaintiff's participation in protected activity and his termination is not itself sufficient to justify an inference of causation or the causal element, citing cases).

Neither Plaintiff Honeycutt nor Harris has demonstrated that the adverse employment action was closely connected in time to their filing of the EEOC complaint. The EEOC Complaint was filed on April 23, 2003; Plaintiff Harris received the corrective action report on April 25, 2004 (nearly 12 months after the protected conduct) and Plaintiff Honeycutt received his written disciplinary report before the filing of the EEOC claim, on April 15, 2003.  However, if there is evidence that a pattern of retaliation begins soon after an EEOC complaint is filed (even when the adverse employment action is much later), then a court should not grant summary judgment. See *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 378 (6th Cir. 1984). Accordingly, I find that both Plaintiffs Harris and Honeycutt have shown that there is a genuine issue of material fact concerning Safeway's motivations in disciplining them.

Accordingly, it is

ORDERED that Plaintiffs' First Motion for Leave to Amend/Correct/Modify Brief in Opposition to Motion for Summary Judgment [Docket #201] is **DENIED AS MOOT.**  It is

FURTHER ORDERED that Defendant's Motion to Strike Plaintiff Tyrone Honeycutt's and Lonnie Harris's Responses to Safeway's Motion for Summary Judgment and Supporting Affidavits [Docket #189] is **GRANTED in part and DENIED in part**, as set forth in this order.  It is

FURTHER ORDERED that Defendant's Motion for Summary Judgement as to Plaintiff Lonnie Harris's Claims [Docket #169] **DENIED.**  It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment as to Plaintiff Tyrone Honeycutt's Claims [Docket #172] is **DENIED.**  It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment as to Plaintiff Sean Murray's Claims [Docket #122] is **GRANTED.**

Dated:  February 15, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

-20-